UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MB, and RB, a minor, by his parent, RRB,

                              Plaintiffs,

             -against-

ISLIP SCHOOL DISTRICT, ISLIP SCHOOL
DISTRICT BOARD OF EDUCATION, CHAD
WALLERSTEIN, individually and in his official capacity,
TIMOTHY MARTIN, individually and in official capacity,
TINA BALLINA, individually and in her official capacity,
JOE MODICA, individually and in his official capacity,
DONNA CARBONARO, individually and in her official
capacity, BARBARA NELSON, individually and in her
official capacity, JEAN TORRES, individually and in her
official capacity, and KRISTINE O'MALLEY,
individually and in her official capacity,

                              Defendants.
--------------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**
14-CV-4670 (SJF)(GRB)

**FILED**
**CLERK**

6/16/2015 4:23 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

       Plaintiffs MB and RB, a minor, by his parent, RRB (collectively "plaintiffs") commenced

this action on August 6, 2014 and filed an amended complaint on August 15, 2014 [Docket Entry

No. 5 ("Amended Complaint" or "Am. Compl.")] against defendants Islip School District

("District"), Islip School District Board of Education ("Board"), Chad Wallerstein

("Wallerstein"), Timothy Martin ("Martin"), Tina Ballina ("Ballina"), Joe Modica ("Modica"),

Donna Carbonaro ("Carbonaro"), Barbara Nelson ("Nelson"), Jean Torres ("Torres"), Kristine

O'Malley ("O'Malley") (collectively "defendants") alleging disability discrimination under the

Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), violation of New York State

Human Rights Law ("NYSHRL") Exec. Law §290 et seq., violation of plaintiff's constitutional

right to equal protection under the Fourteenth Amendment of the U.S. Constitution pursuant to

42 U.S.C. § 1983 ("Section 1983"), negligence, negligence per se, and negligent infliction of

emotional distress.  Pending before the Court are defendants' motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 20 ("Motion to Dismiss")] and plaintiffs' cross-motion to amend the Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  [Docket Entry No. 25 ("Cross-Motion to Amend")].  For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, and the Cross-Motion to Amend is granted in part and denied in part.

I.      BACKGROUND

        A.      Factual Background[1]

        RB is a fifteen (15) year old boy with Klinefelter Syndrome, Obsessive Compulsive Disorder ("OCD"), anxiety disorder, seizure disorder (epilepsy), tic disorder (Tourette's syndrome), developmental delays, mild mental retardation, brain trauma and autism.  [Docket Entry No. 26, Ex. B ("Proposed Second Amended Complaint" or "Proposed SAC") ¶ 1].  As a result of these disorders, RB suffers from involuntary movements and comments associated with his tic disorder, panic attacks, severe anxiety, many characteristics of autism (*id.* ¶ 18) and involuntarily performs rituals which require him to "tic-tap," move, and curse involuntarily.  *Id.* ¶ 30.  Plaintiffs allege that over the course RB's education within the District, he has been the target of "continuous discrimination, harassment, neglect and bullying by his teachers, administrators and students."  *Id.* ¶ 2.

        1.      2011-2012 Academic Year

        RB was homeschooled from second to sixth grade, but began attending Islip Middle School in the 2011-2012 academic year in an inclusive/collaborative seventh grade class.  *Id.* ¶

---

[1]      The following facts are taken from the Proposed SAC.

20.  On September 14, 2011, RB received his first suspension following an incident where, after he climbed on bleachers in the gymnasium, his aide grabbed him, pulled him off the bleachers and across the gymnasium floor in front of general education students, and brought him to the principal's office where he received a lunch detention. *Id*. ¶¶ 21-23.  Defendant Wallerstein, the acting principal, instructed the aide not to allow RB to leave the office until his mother arrived at the school. *Id*. ¶ 24.  RB was extremely nervous and anxious to be alone in the principal's office for several hours with the aide who had mistreated him and attempted to exit the principal's office, at which point the aide blocked his exit, causing RB to panic, a result of his anxiety disorder, and push past his aide to leave the office, for which defendant Wallerstein escalated RB's punishment to a two (2) day suspension from school. *Id*. ¶¶ 25-27.  Following RB's suspension, his two part-time aides were replaced by Mr. Silver, a full-time aide, which purportedly exacerbated the symptoms of his disabilities, particularly his OCD and tic disorder, and caused him to receive multiple lunch detentions throughout the 2011-2012 school year. *Id*. ¶¶ 30-31.  On October 17, 2011, RB was suspended for five (5) days for reaching around his special education teacher, Jean Torres, to complete his tic taps of Mr. Silver. *Id*. ¶¶ 32-33.

Plaintiffs allege that instead of proposing a Functional Behavioral Assessment ("FBA") or a Behavior Intervention Plan ("BIP") and instructing RB's teachers and administrators on how to deal with his disabilities, the District teachers and administrators routinely punished RB, sent him out of class, degraded and humiliated in front of his classmates, failed to implement the agreed upon requirements of his IEP by failing to provide copies of class notes and modified homework assignments, and in October 2011, pressured RB's parents to remove him from the co-teach classroom and place him in a self-contained special education classroom. *Id*. ¶¶ 34-38.

Plaintiffs allege that defendant Martin, the principal at the time, forced RB to transition into the self-contained class and reclassified him as a sixth grader, moving him back one grade. *Id*. ¶ 38.

In November 2011, RB was moved into a self-contained classroom with fourteen (14) other students, one of whom, named "L", began to bully RB on a regular basis because of his disabilities, particularly his uncontrollable tics. *Id*. ¶¶ 40-52. RB reported this bullying to his teacher on multiple occasions but his complaints were routinely ignored and no action was taken to address the bullying of RB. *Id*.

### 2. 2012 Annual IEP Review

A Committee on Special Education ("CSE") meeting was held on May 31, 2012 for the annual review of RB's IEP. *Id*. ¶ 53. At that meeting, it was determined that a Behavioral Improvement Plan ("BIP") would be incorporated into RB's IEP. *Id*. ¶¶ 3, 54. Plaintiffs allege that RB's IEP specified that his teachers would receive training from a behavioral consultant but that no training ever took place. *Id*. ¶ 55. Plaintiffs allege they requested RB receive class notes and assistive technology for writing, but this agreement was never put into RB's 2012-2013 IEP. *Id*. ¶ 56. Plaintiffs also allege that they requested RB be placed in a co-teach classroom and protected (*id*. ¶ 58), but that defendant Martin threatened that RB would not be able to attend school in the District unless he agreed to placement in self-contained classroom for the 2012-2013 school year. *Id*. ¶ 59. Plaintiffs allege this was a retaliatory action for their complaints regarding the discriminatory treatment of RB. *Id*. ¶ 59.

### 3. 2012-2013 Academic Year

During the 2012-2013 academic year, L continued to bully RB, causing RB severe anxiety and fear of school. *Id*. ¶¶ 60-68. MB alerted RB's teacher to this bullying and requested that the boys be separated, but the teacher continued to pair the boys in class, causing more

bullying of RB. *Id.* ¶ 65. RB also reported the bullying to the school psychologist on multiple occasions but the school psychologist purportedly did not respond and allowed the bullying to persist. *Id.* ¶ 66.

In September 2012, Mr. Silver, RB's full-time aide, was replaced with two part-time aides. *Id.* ¶ 69. Plaintiffs allege these aides did not understand RB's disabilities and learning needs because despite the requirements of RB's IEP, no behavioral consulting was provided to these new part-time aides. *Id.* RB's difficulty adjusting to these two new aides made him depressed and extremely anxious, which exacerbated his tic disorder. *Id.* ¶ 70. RB was suspended for two (2) days as a result of an October 9, 2012 incident during which RB followed one of his new aides across the classroom to complete his tic tapping. *Id.* ¶¶ 71-73. Plaintiffs allege that RB's suspension was a result of his disability and defendants' failure to implement the requirements of RB's IEP. *Id.* ¶ 73. On March 18, 2013, RB was disciplined with several days of after school detention for an incident in which he grabbed a teacher's sweatshirt; an action that plaintiffs allege stemmed from his anxiety disorder. *Id.* ¶¶ 74-75. On April 10, 2013, RB was given a five (5) day suspension and advised that he was not allowed to have any contact with other students following an incident where "he had an involuntary tic in which he unintentionally made contact with [a teacher's] face." *Id.* ¶ 76. RB subsequently began to suffer emotional and physical manifestations of his stress and anxiety about attending school, including exacerbations of his tic disorder and difficulty eating and sleeping, and was emotionally unable to return to school for the remainder of the 2012-2013 school year. *Id.* ¶¶ 77-78.

4.     Manifestation Review

On May 7, 2013, at a CSE Meeting for a Manifestation Review, the CSE determined that RB's disciplinary infractions were a manifestation of his disabilities which were handled

incorrectly because the BIP specified in his IEP was never properly implemented, and RB's parents and administrators agreed to expunge RB's disciplinary record from his file and remove all infractions. *Id.* ¶¶ 81-83.

5. Home Tutoring and Retaliation

RB was unable to return to school for the remainder of the 2012-2013 school year and was provided with home tutors. *Id*. ¶¶ 84-86. Despite scoring eighty-five (85) on his final Social Studies exam, one hundred (100) on his final Pre-Algebra exam, ninety-seven (97) on his Science final exam, and sixty-five (65) on his Reading Lab final exam, RB was given a grade of sixty-five (65) in every class for the fourth quarter of the 2012-2013 school year. *Id.* ¶¶ 86-87. RB's parents complained to the District about RB's grades but no action was taken to correct them. *Id.* ¶ 88. In August 2013, RB's parents informed the District that RB would not be returning to school and requested a cross-contract (or school choice) whereby the District would pay for RB to attend school outside the District. *Id.* ¶ 89. The District contacted Commack Union Free School District, East Islip Union Free School District, Bayport-Blue Point School District, Lindenhurst Union Free School District, Connetquot School District, and Smithtown Central School District and requested that RB be considered for placement but the request was denied by each of these districts. *Id.* ¶¶ 90-91. Plaintiffs allege that despite the agreement at the Manifestation Review, RB's disciplinary record was not expunged and each school district received notification of RB's disciplinary infractions. *Id*. ¶ 91. Plaintiffs allege that this was done "intentionally to spite [RB's] parents for their complaints of discriminatory practices within the District" (*id.* ¶ 92) and was "retaliatory in nature against a disabled student." *Id.*

6.      2013-2014 Academic Year

For the 2013-2014 school year, RB's parents requested the same home tutors with whom RB worked in the last quarter of the 2012-2013 school year, however the District sent tutors from a different agency who were not provided with access to the appropriate curriculum or text books, "effectively den[ying] RB any real education." *Id.* ¶¶ 94-95.  Plaintiffs alleged that MB made numerous complaints and requests that went unheeded by the District in "direct retaliation against Plaintiff for complaining of discriminatory practices within the District." *Id.* ¶ 95.  RB and his family were forced to move to Massapequa, New York to get an appropriate education for RB.  *Id.* ¶ 96.  RB is currently receiving psychological counseling from the Family Service League and the services of a social worker.  *Id.* ¶ 97.

B.      Procedural Background

Plaintiffs initiated this action by filing a complaint on August 6, 2014, which they amended on August 15, 2014.  *See* Am. Compl.  On October 17, 2014, defendants served their Motion to Dismiss, which plaintiffs opposed and cross-moved to amend the Amended Complaint.  *See* Cross-Motion to Amend.  The Proposed Second Amended Complaint removes the cause of action under the NYSHRL, adds a claim for retaliation under the ADA and the Rehabilitation Act, and removes all individual defendants other than Wallerstein and Martin (the "Individual Defendants").  *See* Proposed SAC.

Federal Rule of Civil Procedure 15 governs amendments to pleadings and provides, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding these liberal standards, the decision to grant or deny a party's motion for leave to amend "is within the sound discretion of the district court."

*Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). A court may deny leave to amend in circumstances of "'undue delay, bad faith, futility of the amendment, [or]... prejudice.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005) (quoting *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir.1987)). A proposed amendment is futile where the claims would not survive a motion to dismiss. *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

Because plaintiffs moved to amend the Amended Complaint while defendants' motion to dismiss was pending, the Court has "a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint." *Schwartzco Enters. LLC v. TMH Mgmt.,* LLC, No. 14-civ-1082, 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014) (internal quotations and citation omitted). As plaintiffs do not seek to add new defendants, and defendants had sufficient opportunity to respond to the Proposed SAC, the merits of the motion to dismiss will be considered in light of the proposed SAC. *See Costello v. Town of Huntington*, No. 14-civ-2061, 2015 WL 1396448, at *1 (E.D.N.Y. Mar. 25, 2015) ("the Court will consider the merits of Defendant's motion [to dismiss] in light of the allegations in the proposed Amended Complaint"); *Schwartzco Enterprises LLC*, 2014 WL 6390299, at *2 ("the merits of the Motion to Dismiss will be considered in light of the proposed amended complaint").

In opposing plaintiffs' Cross-Motion to Amend, defendants do not argue that granting plaintiffs' motion would prejudice defendants, unduly delay the proceedings, or countenance any bad faith, but rather argue that the proposed amendment would be futile because the Proposed SAC is subject to dismissal for the reasons set forth in defendants' Motion to Dismiss. [Docket

Entry No. 23 (Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Def. Reply")), at 1-3].  Therefore, plaintiffs' Cross-Motion to amend should be granted to the extent that the proposed amendments are not futile.  *See Haag v. MVP Health Care*, 866 F.Supp.2d 137, 140 (N.D.N.Y. 2012) ("Indeed, if the proposed [SAC] cannot survive the motion to dismiss, then plaintiffs' cross-motion to amend will be denied as futile.") (citing *Dougherty*, 282 F.3d at 88).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002)).

## II.      DISCUSSION

### A.      Standards of Review

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011); *see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (internal citations omitted).  "A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). "It is axiomatic that federal courts are courts of limited

jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press…Objections to subject matter jurisdiction…may be raised at any time."). Accordingly, "before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *See Makarova*, 201 F.3d at 113. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v.*

*Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (international citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868. Moreover, in deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotations and citations omitted).

B.      Federal Law Claims

1.      Subject Matter Jurisdiction

Defendants move to dismiss the ADA, Rehabilitation Act, and Section 1983 claims (the "Federal Law Claims") pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure arguing that plaintiffs' failure to exhaust the administrative remedies provided for in the Individuals with Disabilities Education Act ("IDEA") deprives the Court of subject matter jurisdiction.  [Docket Entry No. 22 (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.")), at 4-8].  Plaintiffs argue that they were not required to exhaust their administrative remedies under the IDEA [Docket Entry No. 24 (Plaintiffs' Memorandum in Support of Cross-Motion to Amend and in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.")), at 15-19], and that even if their claims were subject to the IDEA's exhaustion requirement, their failure to exhaust their administrative remedies should be excused under one or more of the futility exceptions.  Pl. Opp., at 10-11.

a.      IDEA's Exhaustion Requirement

"The IDEA's central mandate is to provide disabled students with a 'free appropriate public education' in the least restrictive environment suitable for their needs." *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008); *see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481-82 (2d Cir. 2002) ("The IDEA…mandates federal grants to states to provide disabled children with 'a free appropriate public education' in the least restrictive appropriate environment.").  "Under the educational scheme of the IDEA…parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" *Cave*, 514 F.3d at 245 (quoting

*v. Doe,* 484 U.S. 305, 311-12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). "Educators and parents of a child covered by the IDEA must jointly develop an 'individualized education program' ('IEP') for each year of the child's education." *Polera*, 288 F.3d at 482. "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." *Id.*

"The IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child[.]" *Id.* (citing 20 U.S.C. § 1415(a)). "If a parent believes that her child's IEP or the school's implementation of the IEP does not comply with the IDEA, the parent may file a 'due process complaint' with the appropriate state agency." *B.M. v. New York City Dep't of Educ.*, 569 F. App'x 57, 58 (2d Cir. June 18, 2014) (citing 20 U.S.C. § 1415(b)(6)); *see also Cave*, 514 F.3d at 245 ("Parents are…entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'") (quoting 20 U.S.C. § 1415(b)(6)(A)); 20 U.S.C. § 1415(f), (g) and (h) (delineating the procedural safeguards for parties filing a complaint and their right to seek review through local and state administrative processes). "Districts are then permitted a thirty-day 'resolution period' to address alleged deficiencies without penalty." *B.M.*, 569 F. App'x at 58 (citing 20 U.S.C. § 1415(f)(1)(B)). "Once the resolution period has run, a parent may continue to a due process hearing before an independent hearing officer ('IHO') and appeal the resulting decision to a state review officer ('SRO')." *Id.* (citing 20 U.S.C. § 1415(f), N.Y. Educ. Law § 4404(2)); *see also* 20 U.S.C. §§ 1415(g).

"Only after exhaustion of th[e] procedures [set forth in Section 1415 of the IDEA] has an aggrieved party the right to file a suit in a federal or state court." *Cave*, 514 F.3d at 245 (citing 20

U.S.C. § 1415(i)(2)(A)); *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198,

204-05 (2d Cir. 2007) ("It is well settled that the IDEA requires an aggrieved party to exhaust all

administrative remedies before bringing a civil action in federal or state court...") (quoting *J.S. ex*

*rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004)). "Failure to exhaust the

administrative remedies deprives the court of subject matter jurisdiction." *Cave*, 514 F.3d at 245

(citing *Polera*, 288 F.3d at 483). The IDEA's exhaustion requirement applies "not only when

[litigants] wish to file a suit under the IDEA itself, but also whenever they assert claims for relief

*available* under the IDEA, regardless of the statutory basis of their complaint." *Cave*, 514 F.3d

at 246 (emphasis in original).

> b.      Application of the IDEA's Exhaustion Requirement

Plaintiffs' Federal Law Claims allege violations of the ADA, Section 504 of the

Rehabilitation Act and Section 1983, all of which are subject to the IDEA's exhaustion

requirement "if the relief sought under those statutes would also be available under the IDEA.

*Cave*, 514 F.3d at 245 n.2 ("the IDEA's exhaustion requirement applies equally to relief

available under other statutes, such as the ADA, Section 504, and § 1983, if the relief sought

under those statutes would also be available under the IDEA."). Plaintiffs argue that they "were

not required to exhaust their administrative remedies because they are not seeking a remedy

available under the IDEA…[r]ather, plaintiffs are seeking a redress of the unlawful

discrimination endured by RB, predicated upon his disability and manifest in the disparate

discipline and treatment he received from Defendants." Pl. Opp., at 16-17. Plaintiffs allege that

"this is *not* a case about special education, or challenging the adequacy of services rendered to a

disabled student…[r]ather [the] complaint alleges deliberate indifference to bullying, harassment

and discrimination of [RB] by teachers, administrators, and other students, based on [RB's]

disability" (*id*. at 17) (emphasis in original), and thus because they allege "discrimination beyond a mere violation of the IDEA" (*id*.), the IDEA's exhaustion requirement is not applicable.

However, while plaintiffs allege that their claims "do not concern the adequacy of [RB's] educational services, but rather the discipline he was subjected to because of his disability" (*id*. at 19), the Proposed SAC alleges that unequal treatment and disparate discipline to which RB was subjected based upon his disability impacted his educational services because he was "denied…the opportunity to benefit from the Defendant District and Board's educational services" (Proposed SAC ¶ 101) and that the "disparate discipline became so pervasive that it detracted from RB's educational experience that he had to be homeschooled, and eventually relocated to another school district effectively denying him equal access to the District's resources and opportunities." *Id*. ¶ 102.  As the Second Circuit has noted, "'education, as used within the IDEA, encompasses more than simply academics.'" *Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 40 (2d Cir. 2014) (quoting *Cave*, 514 F.3d at 248).  Because plaintiffs' "claims constitute 'grievances related to the education of disabled children,' they are subject to the IDEA's exhaustion requirements." *Stropkay*, 593 F. App'x at 40 (quoting *Polera*, 288 F.3d at 481).  Like the discrimination claims, plaintiff's retaliation and Section 1983 claims also relate to the interplay between RB's disability and the educational services provided to him and/or his treatment by teachers and school administrators.[2]  Because plaintiffs' Federal Law Claims "all relate to the identification, evaluation, or educational placement of [RB], or his treatment by his teacher because of his disability...these claims all invoke [RB's] right to a free

---

[2]     *See* Proposed SAC ¶ 107 (alleging that defendants retaliated against plaintiffs "by failing to expunge [RB's] disciplinary record as agreed upon, artificially lowering his grades, failing to provide tutors with a curriculum or instruction, sending entire record with the disciplinary actions and low grades to other schools"); Pl. Opp. at 19 ("Plaintiffs allege constitutional violations of RB's right to Equal Protection stemming from the inappropriate discipline and deliberate indifference to instances of bullying").

appropriate public education…[and] are squarely within the ambit of the IDEA." *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012); *see also Gardner v. Uniondale Pub. Sch. Dist.*, No. 08-civ-847, 2008 WL 4682442, at *9 (E.D.N.Y. Oct. 21, 2008) ("plaintiffs must comport with the requirements of IDEA, which is intended to remedy precisely the type of claim presented here – namely, that local school authorities failed to adequately provide a disabled student with appropriate educational services and educational environment. As the gravamen of plaintiffs' action here relates to the deprivation of free and appropriate educational services, which is clearly within the ambit of the IDEA, their request for damages pursuant to other federal statutes and state tort law does not allow them to evade the statute's exhaustion requirement.") (internal citation omitted). Accordingly, absent an applicable exception, plaintiffs were required to exhaust their administrative remedies under the IDEA prior to filing this action.

> c.      Exceptions to the IDEA's Exhaustion Requirement

"The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." *Cave*, 514 F.3d at 249. "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" *Coleman*, 503 F.3d at 205 (quoting *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.,* 830 F.2d 444, 447 (2d Cir. 1987), *Heldman v. Sobol,* 962 F.2d 148, 158 (2d Cir. 1992)). The Second Circuit has "accepted arguments of futility where parents were not informed of administrative remedies…where the state agency was itself acting contrary to law…where the case involves systemic violations that could not be remedied by local or state

administrative agencies…an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)" (*Baldessarre ex rel. Baldessarre*, 496 F. App'x at 134 (quotations and citations omitted)) or "where the complaint alleges that the defendant school district "had failed to implement the clearly-stated requirements of the IEPs." *Stropkay*, 593 F. App'x at 41 (quoting *Polera*, 288 F.3d at 488). In addition, "if plaintiffs can demonstrate that there is no relief available to them through the administrative process, they may avail themselves of the futility…exception[ ] to the exhaustion requirement…" *Taylor v. Vermont Dep't of Educ*., 313 F.3d 768, 790 (2d. Cir. 2002).

Plaintiffs concede that they "did not exhaust the administrative review process required by the IDEA with regards to disproportionate and discriminatory discipline" (Pl. Opp., at 10) but argue that their failure to exhaust "should be excused under the futility exceptions" because: (1) defendants failed to implement the requirements of RB's IEP, specifically by failing to put into place a Behavioral Intervention Plan or behavioral consulting as required by RB's IEP (*id*. at 10-11); (2) "the administrative process would not have corrected the alleged wrongs" because RB was emotionally damaged and "no administrative process could have repaired [this] emotional damage" (Pl. Opp., at 11); and (3) defendants "failed to inform Plaintiff of the administrative process" and thus "[RB] and his family were never informed of their rights, or informed of the administrative process." Pl. Opp. at 11.

The Court need not address each potential futility exception because, as noted *supra*, the exhaustion requirement "will be excused where…the parents have not been notified that [administrative remedies] were available to them." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). Based upon the allegations in the Proposed SAC, which are accepted as true for purposes of this motion, administrative remedies were not available to

plaintiffs because they were "never informed of their due process rights or procedure for which to challenge the IEP" (Proposed SAC ¶ 56) and therefore "could not be required to exhaust their administrative remedies." *Id.* ¶ 57; *see also Conway v. Bd. of Educ. of Northport-E. Northport Sch. Dist.*, No. 13-civ-5283, 2014 WL 3828383, at *13 (E.D.N.Y. Aug. 1, 2014) ("[b]ased upon the allegations in the complaint, which are accepted as true for purposes of this motion, administrative remedies were not available to plaintiff because defendants did not inform her about the procedural safeguards of the IDEA at any time during the 2012–2013 academic year, in violation of Section 1415 of the IDEA"); *Keitt v. New York City*, 882 F. Supp. 2d 412, 435-36 (S.D.N.Y. 2011) ("accepting as true, at this stage of the litigation, [plaintiff's] allegations that Defendants failed to provide notice of the procedural safeguards available under the IDEA, [plaintiff] has satisfied his burden of demonstrating that the futility exception to the exhaustion requirement applies."); *Mason By & Through Mason v. Schenectady City Sch. Dist.*, 879 F. Supp. 215, 218-19 (N.D.N.Y. 1993) (declining to dismiss action on exhaustion grounds where plaintiff claimed "that the School District persistently failed to inform her (and other parents) of the procedural protections as the IDEA requires") (internal citations and quotations omitted).[3]

---

[3]    At the Court's direction, defendants submitted documentation allegedly establishing they provided plaintiffs with notice of their due process procedural safeguard rights pursuant to the IDEA. [Docket No. 30, at 1].  The letter submitted by defendants refers to the District's policy to provide a copy of a "Procedural Safeguards Notice" at a student's "initial referral to a CSE and also with other communications to a parent" and contends that "[t]he plaintiffs, therefore, received the Notice at each of those times." *Id.*  Defendants also submitted letters sent to plaintiffs noting the Procedural Safeguards Notice previously sent and noting that plaintiffs could request an additional copy [Docket Entry No. 30, Ex. 2], and one letter from March 25, 2011 stating that "a copy of the Procedural Safeguards Notice" was enclosed, however the exhibit does not attach a copy of the 2011 Procedural Safeguards Notice. *Id.*  Even assuming plaintiffs received a copy of the 2011 Procedural Safeguards Notice sent on March 25, 2011, and assuming the 2011 Procedural Safeguards Notice complied with statutory requirements of the IDEA, "[a] copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents…1 time a year…[and] also…upon initial referral or parental request for evaluation; upon the first occurrence of the filing of a complaint under subsection (b)(6); and upon request by a parent."  20 U.S.C. § 1415(d).  The documentation submitted by defendants does not demonstrate that defendants complied with the IDEA by providing plaintiffs a copy of the procedural safeguards available to them each academic year.  *See Conway*, 2014 WL 3828383, at *13 ("administrative remedies were not

Therefore, the branch of defendants' Motion to Dismiss seeking dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for plaintiffs' failure to exhaust their administrative remedies is denied based on the allegations in the Proposed SAC that plaintiffs were never informed of the administrative remedies available to them.

2.     Individual Liability under the ADA and the Rehabilitation Act

Defendants have moved to dismiss the ADA and Rehabilitation Act claims asserted against the individual defendants because "there is no individual liability under the ADA or the Rehabilitation Act." Def. Mem., at 8 n.1. Because "[n]either the ADA nor the Rehabilitation Act provides for individual liability premised on claims for monetary damage" (*Kane v. Carmel Cent. Sch. Dist.*, No. 12-civ-5429, 2014 WL 7389438, at *10 (S.D.N.Y. Dec. 15, 2014)), and because plaintiffs seek only monetary damages, the ADA and Rehabilitation Act claims against the individual defendants must be dismissed. *See Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (dismissing ADA and Rehabilitation Act claims against individual defendants because neither statute provides for individual liability for claims for monetary damages); *Cohn v. KeySpan Corp.,* 713 F. Supp. 2d 143, 154-55 (E.D.N.Y. 2010) (same).

3.     Equal Protection Claim

Plaintiffs and defendants agree that plaintiffs' Equal Protection claim asserts a "class-of-one" claim. Def. Mem., at 9-12; Pl. Opp., at 20-22. In a "class of one" equal protection claim, "the plaintiff uses the existence of persons in similar circumstances who received more favorable treatment than the plaintiff...to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose–whether personal or otherwise–is all but certain." *Prestopnik v. Whelan*, 249

---

available to plaintiff because defendants did not inform her about the procedural safeguards of the IDEA at any time during the 2012–2013 academic year, in violation of Section 1415 of the IDEA").

F. App'x 210, 212-13 (2d Cir. 2007) (internal citations and quotations omitted). To prevail on a "class of one" claim, plaintiff must demonstrate that "'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Pappas v. Town of Enfield*, No. 14-2134, 2015 WL 2146140, at *1 (2d Cir. May 8, 2015) (quoting *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir. 2010)). "A successful claim requires 'an extremely high degree of similarity between [the plaintiff] and [her] comparators.'" *Id.* (citing *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012)). "Indeed, the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are '*prima facie* identical' in all other respects." *Rinaldi v. City of New York*, No. 13-civ-4881, 2014 WL 2579931, at *11 (S.D.N.Y. June 10, 2014), *report and recommendation adopted*, No. 13-civ-4881, 2014 WL 4626076 (S.D.N.Y. Sept. 15, 2014) (citing *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)). A plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Pappas*, 2015 WL 2146140, at *1 (citation omitted).

The Proposed SAC alleges that RB was subjected to "unfair and discriminatory disciplinary actions" (Proposed SAC ¶ 4) and was "disciplined for the manifestations of his disabilities which are beyond his control." *Id.* ¶ 3. Plaintiffs allege that a student named "L" was "similarly situated" to RB and that no disciplinary action was taken against L "for incidents of physical and verbal abuse." *Id.* ¶ 42. However, other than stating that "L" is "similarly situated" to RB and that the two students were in the same self-contained classroom, plaintiffs

have not pleaded any facts demonstrating a high degree of similarity between L and RB, or any

facts suggesting how L engaged in similar misconduct as RB but was not punished for such

behavior.  While plaintiffs allege that defendants treated RB differently from L because L "was

involved in issues resulting in the sole discipline of RB" (Pl. Opp. at 22), the allegations in the

Proposed SAC describe incidents between L and RB for which neither student was disciplined.

*See* Proposed SAC ¶¶ 42-52, 61-64.  At most, the Proposed SAC alleges that RB was

"disciplined for the manifestations of his disabilities which are beyond his control" (*id*. ¶ 3)

which resulted in incidents between RB and teachers, aides or school administrators (Proposed

SAC ¶¶ 21-27; 30-33, 71-76), while L was not punished when he intentionally bullied RB.  *Id*.

¶¶ 40-52, 60-64.  Plaintiffs' conclusory statement that L is a similarly situated to RB, without

any supporting facts to suggest an extremely high degree of similarity between L and RB is

insufficient to establish that "no rational person could regard [RB's] circumstances…to differ

from those of [L] to a degree that would justify the differential treatment."  *Pappas*, 2015 WL

2146140, at *2 (citation omitted); *see also Ruston*, 610 F.3d at 60 (affirming district court's

ruling that complaint failed to state a "class of one" equal protection claim where plaintiffs failed

to show that the alleged similarly-situated properties were "so similar that no rational person

could see them as different"); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 341

(E.D.N.Y. 2014) (finding plaintiff failed to state a claim for violation of the Equal Protection

Clause because plaintiff had "not adequately alleged the extremely high degree of similarity

between herself and her fellow students to survive a motion to dismiss"); *Camac v. Long Beach

City Sch. Dist*., No. 09-civ-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (granting

motion to dismiss equal protection claim where "[a]side from assigning these unnamed students

the title of 'similarly situated,' the Complaint contain[ed] no other allegations showing how

another person's circumstances…were prima facie identical to [plaintiff's]") (citations and quotations omitted).

Therefore, the branch of defendants' Motion to Dismiss seeking dismissal of plaintiffs' Equal Protection Claim for failure to state a claim is granted.

### 4. Monell Claim

To hold a municipality liable under Section 1983, a plaintiff "must show that the violation of constitutional rights resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Monell does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original; citations omitted). "[T]o state a claim for municipal liability pursuant to § 1983, a plaintiff must plead facts supporting (1) the existence of a constitutional violation, and (2) a policy or custom giving rise to that violation that the municipality has actively enforced or knowingly ignored." *Peterec v. City of New York*, No. 14-civ-309, 2015 WL 1027367, at *6 (S.D.N.Y. Mar. 6, 2015). "In order to state a viable Monell claim, however, plaintiff must establish some constitutional violation." *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 563 (E.D.N.Y. 2011); *see also Claudio v. Sawyer*, 675 F.Supp.2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor.").

Based upon the foregoing, plaintiffs have failed to adequately establish an underlying constitutional violation and their Monell claim fails as well. *See Eskenazi-McGibney v.*

*Connetquot Cent. Sch. Dist.*, No. 14-civ-1591, 2015 WL 500871, at *14 (E.D.N.Y. Feb. 6, 2015) ("Having concluded that [plaintiff] does not state an equal protection cause of action under Section 1983, the Court need not address whether the District may be liable for any such claim under Monell"); *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267 n.14 (E.D.N.Y. 2014) ("when a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well"); *McCluskey v. Town of Southampton*, No. 12-civ-2394, 2013 WL 4049525, at *10 (E.D.N.Y. Aug. 9, 2013), *appeal dismissed* (Oct. 8, 2013) ("having found that plaintiff has failed to adequately plead a predicate violation of his constitutional rights…any claim for municipal liability necessarily fails as well").

C.     Doctrine of Primary Jurisdiction

Defendants argue that the doctrine of primary jurisdiction precludes plaintiffs' claims because "the review of discretionary determinations to impose discipline is, as a general rule, committed to the Commissioner of Education by reason of the Commissioner's specialized expertise" (Def. Mem., at 14), that "New York State Education Law § 310 "confers broad appellate jurisdiction on the Commissioner of Education to entertain and resolve disputes arising within the context of the public education system" (*id*. at 15) and that the Commissioner of Education "should be afforded the opportunity to resolve issues such as these, as they relate both to the disciplinary consequences imposed for student harassment and the broad policies and procedures of the District." *Id*.

The discretionary doctrine of primary jurisdiction "potentially applies when federal courts have original jurisdiction to hear the claim and the claim requires the resolution of issues placed within the special competence of an administrative body" and "is used to fix forum

priority when the courts and an administrative agency have concurrent jurisdiction over an issue." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 758-59 (2d Cir. 1987) (internal citations omitted)).

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction" (*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)), courts in the Second Circuit generally consider four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006). "[C]ourts seldom defer to an administrative agency when the issue involved is purely a legal question not involving either administrative experience or expertise." *Tirozzi*, 832 F.2d at 759. New York courts have held that "[t]he general rule is that an appeal to the commissioner is the exclusive remedy where the issue involves the professional judgment and discretion of those responsible for the administration of public schools" however, "[w]here [ ] a statutory or constitutional provision is the basis of the dispute or where discrete issues of law are present which do not involve matters of policy, review...by the courts is proper." *Walker v. Board of Education*, 78 A.D.2d 982, 982 433 N.Y.S.2d 660 (App. Div. 4th Dept. 1980) (citations and quotations omitted); *see also H. v. New York Medical College*, 88 A.D.2d 296, 299, 453 N.Y.S.2d 196 (App. Div. 2d Dept. 1982) ("We recognize that in cases where the issue involves the professional judgment and discretion of educators *and a statutory or constitutional provision is not the basis of the dispute and discrete issues of law are not present*, direct review by the courts of the academic policy decisions of educators and educational institutions will not be proper") (emphasis added).

Here, resolution of plaintiffs' remaining Federal Law Claims for violations of the ADA and the Rehabilitation Act depend upon the interpretation of those statutes, and thus do not involve "technical or policy considerations within the Commissioner's particular field of expertise but rather [are] within the conventional wisdom of this Court." *G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 276 (E.D.N.Y. 2012); *see also Rackmyer v. Gates–Chili Cent. School Dist.*, 48 A.D.2d 180, 183, 368 N.Y.S.2d 636 (App. Div. 4th Dept. 1975) ("[W]here rights depend upon the interpretation of a statute which it is claimed the school board or an official has violated, the courts will determine the matter notwithstanding that another procedure for settling the controversy is available."). Further, plaintiffs seek compensatory and punitive damages for the alleged violations, a type of relief that cannot be granted by the Commissioner of Education. *See G.D.S.*, 915 F. Supp. 2d at 276 ("the Commissioner of Education would be unable to provide the Plaintiff redress…because the Plaintiff seeks injunctive relief, compensatory damages and punitive damages."). Therefore, the doctrine of primary jurisdiction does not bar adjudication of plaintiffs' Federal Law claims and defendants' Motion to Dismiss on this ground is denied.

D.    State Law Claims

Plaintiffs' fourth, fifth and sixth claims all assert state law negligence claims (collectively, the "State Law Claims"). Plaintiffs' fourth cause of action alleges negligence and negligent supervision and training (Proposed SAC ¶¶ 113-18), plaintiffs' fifth cause of action sounds in negligence per se (*id.* ¶¶ 119-28), and plaintiffs' sixth cause of action is for negligent infliction of emotional distress. *Id.* ¶¶ 129-36.

1.      Failure to Name Individual Defendants in Notice of Claim

Defendants moved to dismiss the state law claims against the Individual Defendants

based upon, *inter alia*, plaintiffs' "fail[ure] to name any of the individual Respondents" in the

Notice of Claim, arguing that "[i]t is well settled within New York state courts and federal courts

in the Second Circuit that [New York General Municipal Law § 50–e] requires a plaintiff to

name each defendant in the Notice of Claim in order to maintain a cause of action against that

defendant."   Def. Mem., at 18-20.[4]   Plaintiffs' notice of claim names only the District and the

Board, and not the Individual Defendants, as respondents.   [Docket Entry No. 21, Ex. B].   In

their opposition, plaintiffs do not respond to this argument for dismissal of the State Law Claims

asserted against the Individual Defendants and therefore, the Court deems the State Law Claims

against the Individual Defendants to be abandoned.  *See Gorfinkel v. Ralf Vayntrub, Invar*

*Consulting Ltd.*, No. 11-civ-5802, 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014)

(dismissing claims against two defendants because "[p]laintiff…waived any opposition with

---

[4]      In light of plaintiffs' abandonment of these claims, the Court need not decide which intermediate
appellate New York state court to follow on how rigidly to apply General Municipal Law section 50-e.
*See Bailey v. City of New York*, No. 14-civ-2091, 2015 WL 220940, at *21 (E.D.N.Y. Jan. 15, 2015)
(noting that "[t]he New York Court of Appeals has yet to resolve a split among the intermediate appellate
courts on how rigidly to apply the dictates of General Municipal Law section 50-e.  The Fourth
Department has held that a plaintiff need not name each individual defendant in a notice of claim.
*Goodwin v. Pretorius*, 105 A.D.3d 207, 962 N.Y.S.2d 539, 545 (App.Div. [4th Dep't] 2013) ("[C]ourts
have misapplied or misunderstood the law in creating, by judicial fiat, a requirement for notices of claim
that goes beyond those requirements set forth in the statute. If the legislature had intended that there be a
requirement that the individual employees be named in the notices of claim, it could easily have created
such a requirement."). The First Department disagrees." *Cleghorne v. City of N.Y.*, 99 A.D.3d 443, 952
N.Y.S.2d 114, 117 (App.Div. [1st Dep't] 2012) ("[T]he action cannot proceed against the individual
defendants because they were not named in the notice of claim.")").  Defendants' argument for dismissal
based on the failure to name the Individual Defendants in the notice of claim is plausible in light of the
line of cases following the First Department's reasoning. *See Schafer v. Hicksville Union Free Sch. Dist.*,
No. 06-civ-2531, 2011 WL 1322903, at *11 (E.D.N.Y. Mar. 31, 2011) (dismissing claims against
defendants not named in Notice of Claim); *Ruzza v. Vill. of Mamaroneck, N.Y.*, No. 14-civ-1776, 2014
WL 6670101, at *3 (S.D.N.Y. Oct. 6, 2014) (dismissing claim against individual defendant mentioned in
narrative but not identified as a respondent in Notice of Claim).

respect to [defendants'] argument [for dismissal] by failing to oppose the…motion [to dismiss] on that basis"); *Tamir v. Bank of N.Y. Mellon*, No. 12-civ-4780, 2013 WL 4522926, at *2 (E.D.N.Y. Aug. 27, 2013) ("Plaintiff has failed to provide any response to Defendants' plausible arguments, and, therefore, the Court deems the…claim abandoned."); *Thomas v. N.Y.C. Dep't of Educ.*, No. 10-civ-464, 2013 WL 1346258, at *17 (E.D.N.Y. Mar. 29, 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal quotation marks omitted).

2.      Infant-Plaintiff's Failure to Appear for 50-h Examination

Defendants argue that the State Law Claims against the District and Board should be dismissed based upon the infant-plaintiff's failure to comply with defendants' demand for an oral examination pursuant to New York Education Law § 3813 and New York General Municipal Law § 50-h.  Def. Mem., at 20-22.  Plaintiffs agree with defendants that generally "[f]ailure to comply with the demand for an examination precludes a plaintiff from asserting claims subject to the notice of claim requirement" (Pl. Opp., at 29), but argue that plaintiff-infant's "severe disabilities" excused his failure to appear at the 50-h examination.  *Id.* at 29-30.

"Compliance with a demand for a General Municipal Law § 50–h examination is a condition precedent to the commencement of an action against a municipal defendant, and the failure to so comply warrants dismissal of the action."  *Hymowitz v. City of New York*, 122 A.D.3d 681, 682, 996 N.Y.S.2d 337, 338-39 (App. Div. 2d Dept. 2014); *see also McDaniel v. City of Buffalo*, 291 A.D.2d 826, 826, 737 N.Y.S.2d 904 (App. Div. 4th Dept. 2002) ("[i]t is well settled that a plaintiff who has not complied with General Municipal Law § 50–h (1) is precluded from maintaining an action against a municipality"); N.Y. Gen. Mun. Law § 50–h(5) ("Where a demand for examination has been served…no action shall be commenced against the…school

district against which the claim is made unless the claimant has duly complied with such demand for examination"). "The failure to submit to such an examination, however, may be excused in exceptional circumstances, such as extreme physical or psychological incapacity." *Steenbuck v. Sklarow*, 63 A.D.3d 823, 824, 880 N.Y.S.2d 359, 360 (App. Div. 2d Dept. 2009). "Only where a claimant's extreme incapacity has been shown have courts made exceptions to the General Municipal Law's examination provisions." *Alford v. City of New York*, 115 A.D.2d 420, 421-22, 496 N.Y.S.2d 224 (App. Div. 1st Dept. 1985), *aff'd in part, appeal dismissed in part*, 67 N.Y.2d 1019, 494 N.E.2d 455 (1986) (citations omitted).

Here, plaintiffs have not demonstrated "extreme physical or psychological incapacity" sufficient to excuse RB's failure to appear at the 50-h hearing. Plaintiffs allege that RB "suffers from multiple disabilities that impair his cognitive functions, as well as his expressive and receptive language skills" including "Klinefelter Syndrome, mild mental retardation, developmental delays, brain trauma and autism...and severe anxiety disorder" (Pl. Opp., at 29-30) and compare RB to "the psychologically impaired plaintiff in *Hur* [v. City of Poughkeepsie]." *Id*. at 29. However, in *Hur*, the Court did not find that plaintiff was excused from submitting to a 50-h hearing, but held that there was "sufficient question whether the injuries suffered by plaintiff...rendered her incapable, psychologically or otherwise, of submitting to an oral examination...so as to require a hearing at Special Term." *Hur v. City of Poughkeepsie*, 71 A.D.2d 1014, 1015, 420 N.Y.S.2d 414, 415 (App. Div. 2d Dept. 1979). Moreover, in *Hur*, the plaintiff's injuries, which included a spinal cord injury that rendered her a complete quadriplegic, and, according to her physician's affidavit, almost entirely "diaphragmatic" breathing and a "from a psychological point of view the most paralyzing sort of vulnerability" (*id*. at 1014-15) were, like other cases where a plaintiff's failure to appear at a 50-

h hearing has been excused, more extreme than the impairments alleged here.[5]  The "unilateral and subjective assessment of plaintiffs and their attorneys" that RB was would not be able to meaningfully participate in a 50-h examination does not demonstrate "extreme incapacity" on the part of RB to excuse compliance with General Municipal Law 50-h.  *Lara ex rel. Lara v. City of New York*, 187 Misc. 2d 882, 892, 726 N.Y.S.2d 217, 224-25 (Sup. Ct. N.Y. Cnty. 2001) (City entitled to summary judgment where infant-plaintiff was not produced for 50-h examination "due to concerns about how an examination would affect her mental health"); *Brian VV v. Chenango Forks Cent. Sch. Dist.*, 299 A.D.2d 803, 804, 751 N.Y.S.2d 59 (App. Div. 3d Dept. 2002) (no exceptional circumstances, such as extreme physical or psychological incapacity present to excuse six-year-old petitioner's failure to submit to a 50-h examination where plaintiffs offered "only the lay opinion of a victim assistance worker that an examination would be likely to exacerbate the child's anxiety").

Therefore, plaintiffs' State Law Claims against the District and Board are dismissed based on plaintiff RB's failure to appear for a 50-h examination.  *See G.D.S.*, 915 F. Supp. 2d at 281 ("Plaintiff's failure to appear for a 50-h examination is fatal to his second cause of action").

---

[5]       *See also Hymowitz*, 122 A.D.3d at 682 ("the failure to appear for an examination pursuant to General Municipal Law § 50–h should have been excused in light of the decedent's death before service of the demand for her examination, the administrator's willingness to appear at a hearing, and the defendants' failure to demand the examination of any other person"); *Legal Servs. Elderly, Disabled, or Disadvantaged of W. New York, Inc. v. Cnty. of Erie*, 125 A.D.3d 1321, 1321-22, 3 N.Y.S.3d 497, 498 (App. Div. 4th Dept. 2015) (plaintiff's failure to appear for the 50-h examination excused because plaintiff "sustained a severe brain injury and [was] permanently incapacitated" and his "former power of attorney was unable to appear at the hearing or reschedule the hearing for a later date because he was hospitalized with various ailments"); *Steenbuck*, 63 A.D.3d at 823-24 (failure of plaintiff, who had "sustained traumatic brain injury…was hospitalized…[had] speech, memory, and cognitive deficits, [could not] hold an intelligent conversation, and ha[d] no recall of the accident," to appear at the 50-h hearing did not warrant dismissal of the complaint); *Twitty v. City of New York*, 195 A.D.2d 354, 355, 600 N.Y.S.2d 66, 67 (App. Div. 1st Dept 1993) (counsel's representation that plaintiff suffered from quadriplegia and was unable to attend the 50-h hearing were not fraudulent representations warranting dismissal of the complaint because the representations concerning plaintiff, who was confined to her home and bed, had no practical use of her legs and arms, and was in general failing health, were substantially accurate).

29

III.     CONCLUSION

For the foregoing reasons, plaintiffs' Cross-Motion to Amend is granted in part and denied in part and defendants' Motion to Dismiss, deemed as directed at the Proposed SAC, is granted in part and denied in part.  Defendants' Motion to Dismiss is denied as to plaintiffs' ADA and Rehabilitation Act claims against the District and the Board; granted as to plaintiffs' ADA and Rehabilitation Act claims against the Individual Defendants; granted as to plaintiffs' Equal Protection Claim against all defendants; and granted as to plaintiffs' State Law Claims against all defendants.  Plaintiffs' Cross-Motion to Amend is granted insofar as plaintiffs' ADA and Rehabilitation Act claims against the District and the Board for disability discrimination and retaliation remain pending in this action.

**SO ORDERED**.

<u>s/ Sandra J. Feuerstein</u>
Sandra J. Feuerstein
United States District Judge

Dated: June 16, 2015
        Central Islip, New York